IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TOTAL RENAL CARE OF NORTH CAROLINA, L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:05CV00819 |
| THE FRESH MARKET, INC.; THE FRESH MARKET, INC. GROUP HEALTH CARE PLAN; UNIFI, INC.; THE UNIFI, INC. GROUP HEALTH CARE PLAN; PENN WESTERN BENEFITS, INC.; and DOES 1 through 100, inclusive, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

BEATY, Chief District Judge.

This case involves the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and alleged under-payments for services that were provided to three beneficiaries of two benefits plans. It is brought by Plaintiff Total Renal Care of North Carolina, L.L.C. ("Total Renal"), pursuant to 29 U.S.C. § 501(a), (e)(1), and (f), to recover amounts it believes it is owed based upon the delivery of dialysis services to two members of The Unifi, Inc. Group Health Care Plan ("Unifi Plan") and one member of The Fresh Market, Inc. Group Health Care Plan ("Fresh Market Plan") (altogether, the "Plans"). Total Renal asserts that it billed Defendant Penn Western Benefits, Inc. ("Penn Western"), the claims administrator and underwriter for both Plans, for the services provided to the three beneficiaries but that Penn

Western unreasonably discounted Total Renal's services when paying those bills. Total Renal has also sued The Fresh Market, Inc. ("Fresh Market") and Unifi, Inc. ("Unifi") as the named fiduciaries of the Plans.[1]

Currently before the Court are a joint Motion to Dismiss by the Unifi Defendants [Document #15], a Motion to Dismiss by Penn Western [Document #25], and a Motion for Summary Judgment by the Fresh Market Defendants [Document #28]. Additionally, Plaintiff has filed a Motion to Strike [Document #20] and a Motion to Continue [Document #39] seeking at least limited discovery before the Court rules on any Motion for Summary Judgment.

I.  FACTUAL BACKGROUND

Total Renal provides dialysis services to patients in western North Carolina. Total Renal alleges that Miguel Serrano ("Serrano"), Gabriel Wilson ("Wilson"), and Otis Huntley ("Huntley") were each diagnosed with kidney failure, a condition that requires hemodialysis treatment. Thus, in November 2002, Serrano's doctors referred him to Total Renal, where he received care regularly until September 2003. Serrano was a beneficiary under the Unifi Plan. In December 2002, Wilson's doctors referred him to Total Renal, where he received care regularly until June 2004. Wilson was also a beneficiary under the Unifi Plan. In March 2003, Huntley's doctors referred him to Total Renal, where he received care regularly until March 2004. Huntley was a beneficiary under the Fresh Market Plan. Total Renal alleges that before

---

[1] The Court will refer to all of these parties collectively as "Defendants." The Court will also refer to Unifi and the Unifi Plan as the "Unifi Defendants" and Fresh Market and the Fresh Market Plan as the "Fresh Market Defendants."

2

treating Serrano, Wilson, and Huntley, agents of Total Renal contacted agents of Penn Western to request authorization to treat these individuals as an out-of-network provider. As to each individual, Total Renal alleges that Penn Western approved Plaintiff's administration of dialysis services, and agreed to pay a certain percentage of each patient's bills to Total Renal as an out-of-network provider pursuant to the terms of the Plans. Furthermore, as to each individual, Total Renal alleges that it regularly invoiced Penn Western for the services it was providing to the beneficiaries, and in response, Penn Western consistently underpaid the invoices.

Total Renal asserts that under the Unifi Plan, which provided for out-of-network providers, payment should have been one hundred percent (100%) of Total Renal's "reasonable and customary charges" after the patient had met the deductible and out-of-pocket maximum. Total Renal alleges that the Unifi Plan defined "reasonable and customary" to be the amounts normally charged by most providers of comparable services and supplies in the locality where the services were rendered. Similarly, Total Renal asserts that under the Fresh Market Plan, which also provided for out-of-network providers, payment should have been eighty percent (80%) of their reasonable and customary charges, after the patient had met the deductible and out-of-pocket maximum. Total Renal asserts that the Fresh Market Plan had the same definition of "reasonable and customary." However, instead of paying 100 percent or 80 percent of Total Renal's charges, respectively, Total Renal asserts that the Plans paid, through Penn Western, approximately 37 percent of billed charges. Thus, Total Renal asserts that it is owed approximately $102,945.51 for services provided to Serrano, $517,508.88 for services provided

3

to Wilson, and $238,756.39 for services provided to Huntley, plus interest.

Total Renal argues that prior to performing services for the three patients, each patient signed an assignment of benefits form in favor of Total Renal, so that Total Renal could pursue claims on each patient's behalf. Total Renal asserts that when it contacted Penn Western as to the unpaid balances, Penn Western agents repeatedly stated that nothing more was owed and thereby rejected Total Renal's appeals. Total Renal has brought claims under ERISA for benefits against both Plans, a claim for a declaratory judgment that Defendants have no lawful basis to deny benefits, a claim for attorney's fees and costs, and a claim for quantum meruit against the Plans, the Fresh Market, and Unifi, based upon services provided to the beneficiaries.

II. THE UNIFI DEFENDANTS' MOTION TO DISMISS

In response to these claims, the Unifi Defendants argue in their Motion to Dismiss [Document #15] that Plaintiff's claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Total Renal is neither a beneficiary nor a fiduciary with standing to bring a claim under ERISA. Moreover, the Unifi Defendants argue that even if assignment of claims is permitted under ERISA, the Unifi Plan contains provisions against the assignment of benefits. Finally, the Unifi Defendants argue that Total Renal's claim for quantum meruit fails because it is preempted by ERISA. In support of these contentions, the Unifi Defendants have submitted excerpts of the Summary Plan Documents to establish the existence of an anti-assignment provision that the Unifi Defendants contend would preclude Plaintiff's claims in this case.

4

In response to this Motion to Dismiss, Plaintiff contends that it has standing under ERISA, that the assignments were valid, and that the documents submitted by the Unifi Defendants consist of incomplete, "cherry-picked" information from the Summary Plan Documents which do not allow for proper contract analysis. In conjunction with these contentions, Plaintiff has also filed a Motion to Strike [Document #20] seeking to strike these excerpts from the Summary Plan Documents because they lack proper foundation, allegedly fail the best evidence rule under Federal Rule of Evidence 1002, and are allegedly unfairly prejudicial. In response to Plaintiff's Motion to Strike, the Unifi Defendants have filed with the Court full copies (instead of sections) of the Summary Plan Documents. (See Attachments A through D to the Second Affidavit of Angie Cash [Document #24].) However, in reply, Plaintiff contends that the Summary Plan Documents are simply descriptions of the Plans, are not themselves the actual Plan Documents or contracts, and do not contain all of the Plan details. Plaintiff notes that the Unifi Defendants have not submitted the actual Plans to the Court, and that there is some dispute as to the scope and applicability of the various provisions. In addition, Plaintiff notes that the Unifi Plan changed some of the wording of its anti-assignment provision during the applicable time period. Finally, Plaintiff contends that it requested the actual Plan Documents many times but never received them from any of the Defendants, and that it has not had the opportunity to properly review the applicable provisions or pursue any discovery related to the provisions of the Plan Documents. Thus, Plaintiff contends that discovery is necessary before these issues can be properly presented and resolved by the Court.

5

The Court has reviewed the parties' contentions, and concludes that to the extent that the Unifi Defendants' Motion to Dismiss is brought pursuant to Rule 12(b)(1), Plaintiff should be allowed limited discovery as to the issues raised in the Motion to Dismiss with respect to standing. Moreover, many of the Unifi Defendants' contentions go to the merits of the dispute, and resolving these issues requires consideration of documents and evidence beyond those that are ordinarily considered as part of a Rule 12(b)(6) motion to dismiss. See Fed. R. Civ. P. 12(b)(6). Therefore, the Court agrees that resolution of these issues is more appropriate on a motion for summary judgment after a reasonable period of discovery on the relevant issues, rather than pursuant to the present Motion to Dismiss. The Unifi Defendants' Motion to Dismiss will therefore be denied, without prejudice to them raising those issues as part of a motion for summary judgment after a period of limited discovery solely as to the issues raised in the Motion to Dismiss.

III. MOTION FOR SUMMARY JUDGMENT BY THE FRESH MARKET DEFENDANTS

The Fresh Market Defendants have filed a Motion for Summary Judgment [Document #28] raising many of the same issues addressed in the Unifi Defendants' Motion to Dismiss. In response, Plaintiff filed a Motion to Continue [Document #39] asserting that the Fresh Market Defendants' Motion for Summary Judgment is premature. Plaintiff requests that the Court deny or continue the Motion under Fed. R. Civ. P. 56(f) in order to provide the parties adequate opportunity for discovery before resolving the issues raised in the Motion for Summary

6

Judgment.

With respect to this Motion for Summary Judgment, the issues raised by the Fresh Market Defendants are appropriately considered by the Court on a Motion for Summary Judgment. Furthermore, unlike the Unifi Defendants, the Fresh Market Defendants have attached full copies of the Plan Documents themselves instead of the Summary Plan Documents. However, Plaintiff's Motion to Continue identifies numerous discovery issues that Plaintiff contends are relevant to the issues raised in the Motion for Summary Judgment. The Court notes that "[a]s a general rule, summary judgment is appropriate only after 'adequate time for discovery.'" Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2522, 91 L. Ed. 2d 265 (1986)). In addition, the Court has determined that limited discovery is appropriate with respect to the Unifi Defendants, and resolution of the similar issues raised by the Unifi Defendants and the Fresh Market Defendants is more appropriately made together after the close of that limited discovery period. Therefore, the Court concludes that the Fresh Market Defendants' present Motion for Summary Judgment should be denied at this time, without prejudice to the Fresh Market Defendants refiling their Motion for Summary Judgment following a period of limited discovery related solely to the issues that have been raised.

IV.   PENN WESTERN'S MOTION TO DISMISS

Finally, the Court notes that Defendant Penn Western has also brought a separate Motion to Dismiss. Penn Western argues that because it is not a "fiduciary" under ERISA, it is not liable

7

for these charges. Instead, Penn Western asserts that it is merely the claims administrator for the two fully funded Plans, thereby providing only ministerial services, and that it does not make discretionary decisions. Penn Western argues that its agreements with the Plans limit Penn Western's role to determining and paying benefits due in accordance with Plan provisions, providing necessary claim and administration forms, providing summary information regarding claims paid, and recommending any changes to the employers' records maintenance as it applies to the agreements. In support of these contentions, Penn Western has submitted the Administration Agreements for both Plans, as well as other documents and correspondence. In response, Plaintiff contends that it has pled that Penn Western is an ERISA fiduciary and has sufficiently stated a claim, and any further consideration of other documents and evidence is not appropriate at this stage in the litigation.

The Court agrees that consideration of the issues raised in Penn Western's Motion to Dismiss requires review of materials beyond those considered pursuant to Rule 12(b)(6). In addition, to the extent Penn Western's Motion to Dismiss is brought pursuant to Rule 12(b)(1), the Court concludes that Plaintiff should be allowed limited discovery as to the issues raised in the Motion to Dismiss. Therefore, Penn Western's Motion to Dismiss [Document # 25] will be denied at this time, without prejudice to Penn Western raising these issues in a Motion for Summary Judgment filed after a short period of discovery limited to those issues raised in the Motion to Dismiss.

## V. CONCLUSION

The Court has considered the arguments in the joint Motion to Dismiss by the Unifi Defendants [Document #15], the Motion for Summary Judgment by the Fresh Market Defendants [Document #28], and the Motion to Dismiss by Defendant Penn Western [Document #25]. However, the Court has concluded that full consideration of the issues raised in these Motions requires consideration of documents and evidence beyond that considered as part of a Motion to Dismiss pursuant to Rule 12(b)(6). In addition, to the extent the Motions are brought pursuant to Rule 12(b)(1), the Court concludes that Plaintiff should be allowed limited discovery as to the issues raised in the Motions to Dismiss. Finally, to the extent that the Fresh Market Defendants bring their Motion as one for summary judgment which would allow consideration of additional evidence, the Court nevertheless concludes that a determination of these issues should not be made until Plaintiff has been given a short period for discovery limited to the issues raised in the Motions.

IT IS THEREFORE ORDERED that the Unifi Defendants' Motion to Dismiss [Document #15], the Fresh Market Defendants' Motion for Summary Judgment [Document #28], and Defendant Penn Western's Motion to Dismiss [Document #25] are DENIED without prejudice to the parties raising the same issues as part of a Motion for Summary Judgment after a limited period for discovery related solely to the issues raised in the Motions. Discovery shall be limited to 10 interrogatories, 3 depositions, and requests for production of relevant documents by Plaintiff and by Defendants, and must be completed within sixty (60) days from the date of

this Memorandum Opinion and Order. Defendants' Supplemental Motions must be filed within twenty (20) days after the conclusion of the limited discovery period.[2]

IT IS FURTHER ORDERED that, given this ruling, Plaintiff's Motion to Strike [Document #20] and Plaintiff's Motion to Continue [Document #39] will be DENIED AS MOOT. An Order consistent with this Memorandum Opinion will be filed herewith.

This, the 17th day of October, 2006.

/s/ James A. Beaty
United States District Judge

---

[2] The Court notes that to the extent any of the Defendants may contend in their supplemental motions that Plaintiff lacks standing and that as a result this Court lacks jurisdiction, in addition to any other arguments they may raise, the Defendants may file their motions in the alternative pursuant to Rule 12(b)(1) and/or for Summary Judgment pursuant to Rule 56. The Court also notes that should any claims remain after the Court rules on any supplemental motions, those claims would be subject to full discovery and additional Rule 56 motions prior to trial, if appropriate.