# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TOTAL RENAL CARE OF NORTH CAROLINA, L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:05CV00819 |
| THE FRESH MARKET, INC.; THE FRESH MARKET, INC. GROUP HEALTH CARE PLAN; UNIFI, INC.; THE UNIFI, INC. GROUP HEALTH CARE PLAN; PENN WESTERN BENEFITS, INC.; and DOES 1 through 100, inclusive, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

BEATY, District Judge.

This case involves the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and alleged under-payments for services that were provided to three beneficiaries of two benefits plans. Plaintiff Total Renal Care of North Carolina, L.L.C. ("Total Renal") filed a Complaint alleging claims pursuant to sections 502(a), (e)(1), and (f) of ERISA, 29 U.S.C. § 1132(a), to recover amounts allegedly owed for delivery of dialysis services to two members of The Unifi, Inc. Group Health Care Plan (the "Unifi Plan") and one member of The Fresh Market, Inc. Group Health Care Plan (the "Fresh Market Plan") (together, the "Plans"). Total Renal asserts that it billed Defendant Penn Western Benefits, Inc. ("Penn Western"), the claims administrator for both Plans, for the services provided to the three beneficiaries but that

Penn Western unreasonably discounted Total Renal's services when paying those bills. Total Renal has also sued The Fresh Market, Inc. ("Fresh Market") and Unifi, Inc. ("Unifi") as the Plan Administrators.[1]

On November 7, 2005, the Unifi Defendants moved to dismiss Plaintiff's claims for lack of standing and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [Document #15]. On December 19, 2005, Defendant Penn Western moved to dismiss Plaintiff's claims arguing that because it is not a "fiduciary" under ERISA, it is not liable for any charges that were not paid to Total Renal [Document #25]. On December 22, 2005, the Fresh Market Defendants moved for summary judgment [Document #28] against Plaintiff raising the same issues addressed in the Unifi Defendants' Motion to Dismiss. In a Memorandum Opinion and Order issued contemporaneously therewith on September 17, 2006, [Document #48][Document #49] finding that consideration of the issues raised by the Unifi Defendants and Penn Western required review of materials beyond those in the pleadings, this Court denied the Unifi Defendants and Penn Western's motions to dismiss without prejudice to their raising the issues again in subsequent motions for summary judgment following a period of limited discovery. For similar reasons, and in response to Plaintiff's Motion to Continue requesting the opportunity for discovery as to the issues the Fresh Market Defendants had raised [Document #39], the Court denied the Fresh Market Defendants' Motion for Summary Judgment without prejudice.

---

[1] The Court will refer to all of these parties collectively as "Defendants." The Court will also refer to Unifi and the Unifi Plan as the "Unifi Defendants" and Fresh Market and the Fresh Market Plan as the "Fresh Market Defendants."

The time period for limited discovery previously granted by the Court has now expired. Each of the Defendants have now filed separate motions for summary judgment renewing the arguments raised in their initial motions and raising additional arguments that were not previously briefed. Thus, currently before the Court are a Motion for Summary Judgment by the Unifi Defendants [Document #54], a Supplemental Motion for Summary Judgment by the Fresh Market Defendants [Document #56], and a Motion for Summary Judgment by Penn Western [Document #58].

I.      FACTUAL BACKGROUND

Plaintiff, Total Renal, is a subsidiary of DaVita, Inc.[2] Total Renal is a health care provider which provides dialysis services to patients in North Carolina. Defendants Unifi and the Fresh Market maintain self-funded employee benefit Plans for their employees and serve as their respective Plans' Named Fiduciaries and Plan Administrators. Defendant Penn Western served as the claims administrator for both the Unifi and the Fresh Market Plans. As the claims administrator, Penn Western interpreted the Plans, made determinations on behalf of Unifi and the Fresh Market with respect to payment of benefits under the respective Plans, and paid out those benefits, subject to Unifi and the Fresh Market's ultimate discretion to modify Penn Western's determinations.

_____

[2] The distinction between the parent company, DaVita, Inc., and its subsidiary, Total Renal Care of North Carolina, L.L.C., is immaterial to the Court's analysis in this Memorandum Opinion. Therefore, for the purposes of this Memorandum Opinion, the Court will refer to DaVita, Inc. as "Total Renal," or "Plaintiff."

Taking the evidence in the light most favorable to Total Renal, the non-moving party, the Court will now discuss the facts relevant to the above motions. Total Renal alleges that Miguel Serrano ("Serrano"), Gabriel Wilson ("Wilson"), and Otis Huntley ("Huntley") who were each diagnosed with kidney failure, received hemodialysis treatment at a Total Renal facility. Serrano was a beneficiary under the Unifi Plan from November 2002 to September 2003. Wilson was also a beneficiary under the Unifi Plan and received treatment at Total Renal from December 2002 through June 2004. Huntley, a beneficiary under the Fresh Market Plan, received treatment at Total Renal from March 2003 until March 2004.

Total Renal alleges that before treating Serrano, Wilson, and Huntley, agents of Total Renal contacted agents of Penn Western to request authorization to treat these individuals as an out-of-network provider. As to each individual, Total Renal alleges that Penn Western approved Total Renal's administration of dialysis services and agreed to pay a certain percentage of each patient's bills, but that Penn Western thereafter consistently underpaid the invoices.

Total Renal further alleges that under the Unifi Plan, which provided for out-of-network providers, payment should have been for one hundred percent (100%) of Total Renal's "reasonable and customary charges" after the patient had met the deductible and out-of-pocket maximum.[3] Similarly, Total Renal asserts that under the Fresh Market Plan, which also provided for out-of-network providers, payment should have been for eighty percent (80%) of their

---

[3] Total Renal alleges that the Unifi Plan and Fresh Market Plan defined "reasonable and customary" to be the amounts normally charged by most providers of comparable services and supplies in the locality where the services were rendered.

4

reasonable and customary charges, after the patient had met the deductible and out-of-pocket maximum. However, instead of paying 100% or 80% of Total Renal's charges, respectively, Total Renal asserts that the Plans paid, through Penn Western, approximately 37% of the billed charges. Thus, Total Renal alleges that it is owed approximately $102,945.51 for services provided to Serrano, $517,508.88 for services provided to Wilson, and $238,756.39 for services provided to Huntley, plus interest in each instance.

Total Renal argues that prior to performing services for the three patients, each patient signed a Patient Authorization and Financial Responsibility Form authorizing Total Renal to pursue claims on each patient's behalf. Total Renal contends that the Patient Authorization and Financial Responsibility Form constitutes an assignment of rights and benefits under the respective Plans. Total Renal further alleges that when it contacted Penn Western regarding the unpaid balances, Penn Western agents repeatedly stated that nothing more was owed and subsequently rejected Total Renal's appeals. Following Total Renal's exhaustion of its appeals through Penn Western, Total Renal filed a Complaint in this Court alleging claims against both Plans, the Plan Administrators, and the claims administrator under section 502(a)(1)(B) of ERISA for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); a claim for a declaratory judgment that Defendants have no lawful basis to deny benefits; a claim for attorney's fees and costs; and a claim for quantum meruit against the Plans, the Fresh Market, and Unifi, based upon services

5

provided to the beneficiaries.[4]

In response to these claims, each of the Defendants argue in their respective motions for summary judgment that Total Renal has no standing under section 502(a)(1)(B) of ERISA to bring a claim for benefits because Total Renal is neither a "beneficiary" nor a "plan participant" under ERISA, and ERISA does not provide for the assignment of claims. Moreover, the Defendants argue that even if assignment of claims is permitted under ERISA, the Unifi and Fresh Market Plans contain provisions against the assignment of benefits. In addition to these standing arguments, the Unifi Defendants and the Fresh Market Defendants argue that Total Renal's claims for quantum meruit must also fail because they are preempted by ERISA.

The Fresh Market Defendants further argue that even if assignment of claims is permitted under ERISA and the Fresh Market Plan, the Patient Authorization and Responsibility Form signed by Mr. Huntley did not assign any rights to Total Renal. Finally, the Fresh Market Defendants argue that as an assignee of DaVita, Inc., the parent company of Total Renal, Total Renal does not have standing as a plaintiff in order to proceed under ERISA.

Defendant Penn Western's Motion for Summary Judgment presently before the Court argues, additionally, that because it is not a "fiduciary" under ERISA, it is not liable for the

---

[4] The Court notes that in Plaintiff's responses to each of the Defendants' motions for summary judgment, Plaintiff attempts to present evidence that would support a claim against the Defendants for actionable retaliation in violation of section 510 of ERISA pursuant to 29 U.S.C. § 1140. However, Plaintiff has not alleged a cause of action for actionable retaliation under section 510 of ERISA in its Complaint. Therefore, since a claim under section 510 of ERISA is not properly before the Court, the Court will not address either the claim, or the evidence in support of it in ruling on the Defendants' motions for summary judgment.

charges that Total Renal claims to be owed. Instead, Penn Western asserts that it ws merely the claims administrator for the two fully funded Plans, thereby providing only ministerial services, and that it did not make discretionary decisions. Penn Western argues that its agreements with the Plans limited Penn Western's role to determining and paying benefits due in accordance with Plan provisions and that all final determinations as to the eligibility for or the amount of benefits were to be made by the Plan Administrators. Further, the Plans provide that Penn Western's duties are ministerial in nature and involve no fiduciary or discretionary functions. (Penn Western's Mem. Supp. Mot. Summ. J.; Doc. # 59, p.4.) (Penn Western's Mem. Supp. Mot. Dismiss; Doc. #27, Ex. 1; Ex. 2.) Thus, Penn Western asserts that it cannot be liable for these claims because it is not a proper party under ERISA. The Court will now discuss each of the Defendants' motions for summary judgment.

II.    STANDARD OF REVIEW

       The standard for granting summary judgment is well-settled. Pursuant to Federal Rule of Civil Procedure 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). It is the moving party's burden to show that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law. A fact is considered "material" if it "might affect the outcome of

7

the suit under the governing law . . . ." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

When considering a motion for summary judgment, the Court "view[s] the evidence in the light most favorable to the non-moving party, granting that party the benefit of all reasonable inferences." <u>Bailey v. Blue Cross & Blue Shield</u>, 67 F.3d 53, 56 (4th Cir. 1995). If the moving party has carried its burden under Rule 56(c), the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In so doing, the nonmoving party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. <u>Anderson</u>, 477 U.S. at 248–49, 106 S. Ct. at 2510; <u>Catawba Indian Tribe</u>, 978 F.2d at 1339. There can be "no genuine issue as to any material fact" if the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case," since "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); <u>accord</u> <u>White v. Rockingham Radiologists, Ltd.</u>, 820 F.2d 98, 101 (4th Cir. 1987). As a result, the Court will only enter summary judgment in favor of the moving party when "'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances.'" <u>Campbell v. Hewitt, Coleman & Assocs.</u>, 21 F.3d 52, 55 (4th Cir. 1994)

8

(quoting Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967)). With this standard in mind, the Court now turns to the merits of the Plaintiff's claims to determine if summary judgment in favor of the Defendants is appropriate.

III.     THE UNIFI AND FRESH MARKET DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

A.     Standing Under ERISA Section 502(a)(1)(B)

Plaintiff alleges in its Complaint that it has standing to pursue a claim against Defendants under section 502(a)(1)(B) of ERISA. Section 502(a)(1)(B) of ERISA, codified as 29 U.S.C. § 1132(a)(1)(B), provides that "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan." Id. The Unifi and Fresh Market Defendants assert two primary arguments in their motions for summary judgment against Total Renal. First, the Unifi and Fresh Market Defendants argue that Total Renal has no standing to bring a claim under section 502(a)(1)(B) of ERISA because it is a health care provider and not a "participant" or "beneficiary" of a participating ERISA plan.[5] Second, the Unifi and Fresh Market Defendants state that even if Total Renal would have standing under ERISA, the particular provisions of the Unifi Plan and the Fresh Market Plan contain anti-

_____

[5] Under ERISA the term "participant" means "any employee . . . who is or may become eligible to receive a benefit of any type from any employee benefit plan. . . ." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(16)(A).

9

assignment clauses which would preclude Total Renal from asserting claims as an assignee of the beneficiaries or plan participants.

In response to the above mentioned arguments, Plaintiff contends that the Unifi and Fresh Market Defendants, acting through the claims administrator, Penn Western, should be estopped from arguing that Plaintiff lacks standing to pursue its claims under ERISA; and that Defendants should be estopped from arguing in the alternative, that it is prohibited from doing so by the Unifi and Fresh Market Plans anti-assignment provisions, because these arguments were not asserted during the appeals process as a basis for denying Plaintiff's appeals for non-payment of claims. Total Renal argues that by the Unifi and Fresh Market Defendants asserting that Total Renal lacks standing to sue under ERISA or, in the alternative, the ERISA plans, that these Defendants have "surprised" Plaintiff with a new basis for rejecting its claims. Specifically, Plaintiff argues that ERISA requires a plan administrator to provide notice to any "participant or beneficiary" whose claim for benefits under the plan has been denied and to set forth the "specific reasons" for denial. 29 U.S.C. § 1133; see also, Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 157 (4th Cir. 1993).

It is evident from the denial letters that the Unifi and Fresh Market Plans, acting through Penn Western as the claims administrator, never raised the issue of Total Renal's standing to pursue a claim in its own right as an assignee of Mr. Wilson, Mr. Serrano, or Mr. Huntley's benefits. (Unifi Defs.' Mot. Summ. J.; Doc. #71, Supp. Ex. 7, p. 72.) (Complaint; Doc. #1, Ex. H, J, K.) However, it is also evident that during the appeals of the denial of claims relating to

10

the services it provided to Mr. Wilson, Mr. Serrano, and Mr. Huntley, Total Renal never claimed to be appealing the non-payment of claims in its own right an as assignee. (Complaint; Doc. #1, Ex. G, I, K.)  In its denial letters, Penn Western informed Plaintiff that only the "participant" could pursue an appeal of an adverse benefit determination, unless Plaintiff submitted a signed statement from the participant designating Total Renal as his authorized representative. (Penn Western's Reply Mem. Supp. Mot. Summ. J.; Doc. #73, Ex. B, p. 1, 2.) (Complaint; Doc. #1, Ex. L.)  In response, Total Renal in its own words stated that it had received Penn Western's letters "requesting a signed statement from [the beneficiary] authorizing [Plaintiff] as representative for the purposes of appealing and collecting benefits due on claims submitted." (Penn Western's Reply Mem. Supp. Mot. Summ. J.; Doc. #73, Ex. C.)  Attached to Total Renal's responses were Patient Authorization Forms as to Mr. Serrano and Mr. Huntley.  The Patient Authorization Form states, "I [the beneficiary or plan participant] authorize [Plaintiff] to appeal *my* insurance reimbursements on *my* behalf."  (emphasis added) (Penn Western's Reply Mem. Supp. Mot. Summ. J.; Doc. #73, Ex. C, p. 2, 4.) These forms, however, are devoid of any assertion that Total Renal was acting on its own behalf as an assignee for the purpose of the appeals.[6]  Rather, the

_____

[6]  The Court notes that there is a distinction between the Patient Authorization Forms [Penn Western's Reply Mem. Supp. Summ. J.; Doc. #73, Ex. C, p. 2, 4] which were supplied to Penn Western during the appeals process, and the Patient Authorization and Financial Responsibility Forms [Complaint; Doc. #1, Ex. B, C] and the Patient Assignment of Benefits and Agreement to Cooperate Form [Complaint; Doc. #1, Ex. A] upon which Total Renal relies in this lawsuit to establish an alleged assignment.  There is no evidence that the Patient Authorization and Financial Responsibility Forms and the Patient Assignment of Benefits and Agreement to Cooperate Form were ever provided to Unifi or Fresh Market by way of Penn Western during the appeals process.  This further supports the Court's conclusion that Total

plain language of the Patient Authorization Forms together with the correspondence between Plaintiff and Penn Western during the appeals process, establish that Plaintiff was appealing the denial of benefits on behalf of the beneficiaries as their "authorized representatives," rather than in their own right as assignees. Thus, the Court finds that there is simply no evidence from which a reasonable juror could conclude that Total Renal was appealing the Defendants' denial of claims in its own right as an assignee of the beneficiaries' claims. It appears to the Court that Plaintiff has mistaken its attempts to assert a legal theory for recovery in its own right under ERISA with the actions it took on behalf of the beneficiaries during the appeals process. Accordingly, the Unifi and Fresh Market Defendants could not be expected to assert lack of standing as a basis for denying Total Renal's appeals, when it is evident that it was not until after the appeals process had ended and this lawsuit was filed, that Total Renal then attempted to recover benefits as an assignee.[7] Therefore, the Unifi and Fresh Market Defendants are not estopped from raising Total Renal's lack of standing as grounds for summary judgment to the

---

Renal did not pursue an appeal in its own right as an assignee, but rather, it was pursuing the appeals on the behalf of and for the benefit of the beneficiaries.

[7] For similar reasons, the Court finds that Penn Western's statement as the claims administrator of the Unifi and Fresh Market Plans, that "since the appeals process is now closed, you [Total Renal] have a right to bring an action under Section 502A of ERISA" does not constitute a waiver of the Defendants' right to contest Plaintiff's claims based on a lack of standing. The Court finds no inconsistency with this statement and the evidence that Plaintiff was pursuing appeals on behalf of the beneficiaries and not in their own right as assignees. Thus, Plaintiff's alternative argument that the Defendants have waived lack of standing as a defense because they failed to deny Plaintiff's claims on those grounds during the appeals process must likewise fail.

12

extent that the Plaintiff argues that Defendants failed to assert lack of standing as a basis for denying Total Renal's appeals on behalf of the beneficiaries.[8]

Having concluded that Defendants are not estopped from raising Total Renal's lack of standing to pursue this lawsuit as an alleged assignee of Mr. Wilson, Mr. Serrano, and Mr. Huntley's benefits, the Court will now address the substantive issue of whether ERISA provides standing based upon the assignment of benefits from a participant or beneficiary to a health care provider. Both Defendants and Plaintiff agree that the Fourth Circuit Court of Appeals has not specifically ruled on this issue. Thus, Defendants would have this Court follow the Third Circuit Court of Appeals, which has noted in dicta that health care assignees lack standing to pursue claims under ERISA. See Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 154 (3d Cir. 1985). In Northeast Dep't, the Third Circuit stated that "Congress simply made no provision in § 1132 [section 502 of ERISA] for persons other than participants and beneficiaries to sue, including persons purporting to sue

_____

[8] Defendant Penn Western also raised the argument that Plaintiff lacks standing under ERISA to pursue its claims and that the anti-assignment provisions in the Unifi and Fresh Market Plans preclude Plaintiff from asserting claims as an assignee. Thus, Plaintiff likewise responds that Penn Western should be estopped from raising these arguments since neither lack of standing under ERISA nor the anti-assignment language in the Plans were asserted as a basis for denying Plaintiff's appeals. For the same reasons that the Court determined that the Unifi and Fresh Market Defendants are not estopped from asserting Plaintiff's lack of standing, the Court also concludes that Penn Western is not precluded from raising Plaintiff's lack of standing as a defense in this suit.

13

on their behalf." Id. at 154 n.6.[9]

However, the Court finds that a majority of circuits that have dealt with this issue have not followed the Third Circuit, including a few sister district courts in the Fourth Circuit, and one unpublished Fourth Circuit case in dicta. For example, the Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits have all held that a health care provider assignee has derivative standing under ERISA, and as such may bring an action under 29 U.S.C. § 1132(a) against an ERISA plan. See Hermann Hosp. v. MEBA Med. & Benefits Plan, 845 F.2d 1286, 1289 (5th Cir. 1988); Kennedy v. Connecticut Gen. Life Ins. Co., 924 F.2d 698, 700-01 (7th Cir. 1991); Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters and Engineers Health & Welfare Plan, 25 F.3d 616, 619 (8th Cir. 1994); Misic v. Building Serv. Employees Health & Welfare Trust, 789 F.2d 1374, 1379 (9th Cir. 1986); Cagle v. Bruner, 112 F.3d 1510, 1515 (11th Cir. 1997). In these cases, the courts have particularly noted the fact that while ERISA does not specifically allow derivative standing as to health care benefits, it also does not explicitly prevent it as it does for pension benefits. See Misic, 789 F.2d at 1376. The Eleventh Circuit in Cagle furthermore concluded that allowing derivative standing as to a health care provider would facilitate, rather than hamper, an employee's ability to receive health benefits because the health facility would be less likely to refuse care to the employee when pursued in this fashion, and the health facility would have greater resources than the employee to pursue ERISA violations. Cagle, 112 F.3d at 1515.

_____

[9] The Court notes that this Third Circuit case did not actually involve any assignment of benefits.

14

Moreover, in addition to these cases from other circuits, the Fourth Circuit acknowledged in a non-binding, unpublished decision that derivative standing could exist under ERISA. See Yarde v. Pan American Life Ins., Nos. 94-1167, 94-1312, 1995 WL 539736, at *5 (4th Cir. Sept. 12, 1995) (finding derivative standing for life insurance benefit and stating that "[w]e find no principled way to distinguish between the health care provider who stands in the shoes of a plan participant or beneficiary and Yarde who, for purposes of the $8,000 death benefit, stands in the shoes of his mother.").

More persuasive even than Yarde are published cases from the district courts in Maryland, which specifically found that derivative standing may exist for health care service providers when the provider is specifically assigned the beneficiary's rights under the ERISA plan. See Peninsula Reg'l Med. Ctr. v. Mid-Atl. Med. Servs., LLC, 327 F. Supp. 2d 572, 576 (D. Md. 2004) (recognizing derivative standing for third-party providers when there is an assignment of rights); Johns Hopkins Hosp. v. Carefirst of Maryland, Inc., 327 F. Supp. 2d 577, 581 (D. Md. 2004) (noting that third-party providers have standing to sue when there is a specific assignment of rights); Nat'l Ctrs. for Facial Paralysis, Inc. v. Wal-Mart Claims Admin. Group Health Plan, 247 F. Supp. 2d 755 (D. Md. 2003) (noting that the defendant did not challenge third-party provider's right to sue under ERISA as an assignee, but assuming that such standing is possible). Based upon these cases, the Court will assume, without deciding, that, notwithstanding any contractual agreements between the parties to the contrary, a health care provider may be assigned benefits by a participant or beneficiary, and thereby obtain standing under section 502(a)(1)(B) of ERISA.

15

Thus, the Court now turns to the second argument posed by Defendants, that is, that even if specific assignments are a permissible avenue for health care providers to obtain standing under section 502(a)(1)(B) of ERISA, the Unifi and Fresh Market Plans each contain provisions specifically prohibiting the assignment of benefits. Both Plans then would argue that such provisions negate any attempts by Plaintiff to obtain plan participant or beneficiary status for the purposes of bringing an ERISA claim by virtue of an assignment.

B.     The Fresh Market Plan's Provision Regarding Assignment of Benefits and Plan
       Participant or Beneficiary Status

ERISA plans are contractual documents. Thus, claims for ERISA plan benefits under section 502(a)(1)(B) of ERISA are contractual in nature. While ERISA plans are regulated by statute, in interpreting ERISA plans, the Court applies established principles of contract law. Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 639 (4th Cir. 2007). While there are no Fourth Circuit opinions on the issue of anti-assignment provisions in ERISA plans, a number of other circuit courts have held that anti-assignment clauses in benefit plan documents are enforceable. See Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1295 (11th Cir. 2004) ("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan – like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348, 352 (5th Cir. 2002) (upholding validity of anti-assignment clause); City of Hope Nat'l Med. Ctr. v.

16

Healthplus, Inc., 156 F.3d 223, 229 (1st Cir. 1998) (same); St. Francis Reg'l Med. Ctr. v. Blue

Cross & Blue Shield, 49 F.3d 1460, 1464-65 (10th Cir. 1995) (same); Davidowitz v. Delta Dental,

Inc., 946 F.2d 1476, 1478 (9th Cir. 1991) (same).  With these principles in mind, the Court now

turns to the specific language of the Fresh Market Plan.

The Fresh Market Plan contained this provision under the heading "Payment of Claims":

> All Plan benefits are payable to the Employee and cannot be
> transferred nor assigned to another person or organization.  All or
> a portion of any indemnities provided by the Plan on account of
> hospital, nursing, medical, or surgical services may, with the
> Employee's authorization be paid directly to the Hospital or
> provider of such service.  However, the payment of these benefits
> to any such provider or organization will not constitute an
> assignment of benefits under this Plan, further under no
> circumstances will any provider or organization rendering such
> services be deemed a Plan Participant nor Beneficiary under this
> Plan.

(Fresh Market Defs.' Mem. Supp. Mot. Summ. J., Doc. #29; Decl. William E. Bailey, Ex. 2, p.

64, Ex. 3, p. 26.) When interpreting an ERISA health insurance plan, the Court will "enforce the

plan's plain language in its ordinary sense." Bynum v. CIGNA Healthcare of North Carolina,

287 F.3d 305, 313 (4th Cir. 2002); see also, United McGill Corp. v. Stinnett, 154 F.3d 168, 172

(4th Cir. 1998) ("the plain language of an ERISA plan must be enforced in accordance with 'its

literal and natural meaning.'")(internal citations omitted).   The Court agrees that an

unambiguous anti-assignment clause would be enforceable and if found in this case, would be

cause for awarding summary judgment in favor of the Fresh Market Defendants on the issue of

standing and thus, dismissal of Plaintiff Total Renal's ERISA-based claims because such a clause

17

would mean that Total Renal lacked derivative standing. The Fresh Market Plan specifically

states that "[a]ll plan benefits are payable to the Employee and cannot be transferred *nor assigned*

to another person or organization." (emphasis added). The Fresh Market Plan further provides

that although benefits may be paid to a provider of services, "the payment of these benefits . . .

will not constitute an assignment of benefits under this Plan." Thus, the Court finds that the

parties have specifically contracted against the assignment of benefits. Additionally, the Court

notes that even if this Plan could be read to permit assignment of benefits, the Plan states, with

respect to who may be considered a plan participant or beneficiary under the Plan, that "under

no circumstances will any provider or organization rendering such services be deemed a Plan

Participant nor Beneficiary under this Plan." Thus, the Court finds that the parties have also

specifically contracted against the argument that Total Renal has raised: that it, as a health care

provider, is a plan participant or beneficiary for the purposes of obtaining benefits under the

Plan.

Finally, having concluded that Total Renal and the Fresh Market Defendants have

specifically contracted against the assignment of benefits and have also specifically addressed who

may be deemed a plan participant or beneficiary, Total Renal's attempt to raise a genuine issue

of fact as to whether the Patient Authorization and Financial Responsibility Form constitutes

a valid assignment is without consequence, since the anti-assignment clause of the Fresh Market

18

Plan prohibits even an otherwise valid assignment.[10]  Accordingly, the Fresh Market Defendants'

Motion for Summary Judgment concerning Plaintiff's ERISA-based claims will be GRANTED.

      C.      The Unifi Plan's Provision Regarding Assignment of Benefits and Plan Participant

                or Beneficiary Status

      Keeping the aforementioned principles of contract construction in mind, the Court now

turns to the language of the Unifi Plan regarding the assignment of benefits and who may be

deemed a plan participant or beneficiary under its Plan. The Court notes that during the years

2002 through 2004 in which Total Renal provided dialysis services to Mr. Serrano and Mr.

Wilson, both beneficiaries under the Unifi Plan, the Unifi Defendants changed some of the

wording of the Plan's provision regarding assignment.  The 2002 and 2003 Unifi Plans contained

this provision:

> All Plan benefits are payable to you and cannot be transferred nor
> assigned to another person or organization.  All or a portion of any
> indemnities provided by the Plan on account of hospital, nursing,
> medical or surgical services may, with your authorization be paid
> directly to the hospital or provider of such service.  However, the
> payment of these benefits to any such provider or organization will
> not constitute an assignment of benefits under this Plan;
> furthermore, under no circumstances will any provider or
> organization rendering such services be deemed a Plan Participant
> or Beneficiary under this Plan.

(Unifi Defs.' Mot. Summ. J.; Doc. #54, Ex. 2, p. 3, Ex. 3, p. 3.)  The language of the 2002 and

2003 Unifi Plans is nearly identical to the language the Court previously discussed regarding the

---

[10]    For the same reasons, the Court finds no need to address the Fresh Market
Defendants' argument that Total Renal lacks standing to sue as an assignee of DaVita, Inc.

Fresh Market Plan. Thus, the Court finds that the 2002 and 2003 Unifi Plans clearly prohibit the assignment of benefits and further prohibit healthcare providers from being deemed a plan participant or beneficiary under the Unifi Plans. Total Renal has made a claim for benefits allegedly owed for services due to Mr. Serrano from November 2002 to September 2003 and Mr. Wilson from March 2002 to December 31, 2003. Because the 2002 and 2003 Unifi Plans specifically prohibit the assignment of benefits to healthcare providers and further prohibits Total Renal from being deemed a plan participant or beneficiary under the Plan, the Court concludes that Total Renal would not be entitled to additional payment of benefits under section 502(a)(1)(B) of ERISA for services rendered to Mr. Serrano and Mr. Wilson in 2002 and 2003.[11] Therefore, summary judgment in favor of the Unifi Defendants as to Total Renal's ERISA claim for benefits allegedly owed for services provided to Mr. Serrano and Mr. Wilson in 2002 and 2003 will also be GRANTED.

However, as to the benefits allegedly owed to Total Renal for services it rendered to Mr. Wilson in 2004, the Court notes that the Unifi Plan was amended to include the following language, effective January 1, 2004:

> All Employee Welfare Benefit Plan benefits are payable to

_____

[11]    Furthermore, Total Renal's reliance on the Patient Assignment of Benefits and Agreement to Cooperate Form to establish an assignment of Mr. Serrano's benefits is also misplaced. First, the Court notes that this form was signed after Mr. Serrano was no longer an eligible participant in the Unifi Plan. However, more importantly, the question of whether this particular form constitutes a valid assignment is moot, since the 2002 and 2003 Unifi Plans prevent an assignee from obtaining Plan Participant or Beneficiary status, so as to obtain standing to bring a claim under ERISA.

20

you or an assigned health care provider and cannot be
transferred or assigned to another person or organization.
Under no circumstances will any assignee be deemed a Plan
Participant or Beneficiary under this plan. If an unassigned
benefit remains unpaid at your death, the Plan Supervisor
may, at its option, pay such benefit to any one or more of
the following: spouse, parent, child, sibling or your estate.
Any payment so made will constitute a complete discharge
of the plan's obligation to the extent of such payment and
the plan will not be required to see the application of the
money so paid.

(Unifi Defs.' Mot. Summ. J.; Doc. #54, Ex. 4, p. 6.) Total Renal argues that by amending the

language of the Plan which clearly prohibited the assignment of benefits in 2002 and 2003, to

state that "benefits are payable to you or an *assigned health care provider*" (emphasis added), the

2004 Amendment to the Unifi Plan is ambiguous as to whether assignments are permitted. As

such, Total Renal would have the Court look to extrinsic evidence to determine whether the

Unifi Defendants understood that the Plan permitted assignment of benefits to health care

providers such as Total Renal.

The Court finds that by removing the clear anti-assignment language that was included

in the 2002 and 2003 plans, and replacing that provision with the statement that "benefits are

payable to you or an *assigned health care provider*," (emphasis added) the 2004 Unifi Plan is not

ambiguous, and in fact permits the assignment of benefits to health care providers. However,

in order to conclude that this provision permitting the assignment of benefits to health care

providers entitles Total Renal to obtain standing to bring suit under section 502(a)(1)(B) of

ERISA as a plan participant or beneficiary, the Court would have to ignore the very next

21

sentence of the 2004 Unifi Plan which specifically states that: "[u]nder no circumstance will any assignee be deemed a Plan Participant or Beneficiary under this Plan." The Court notes that this particular sentence is identical to the 2002 and 2003 Unifi Plans, and is also identical to the language included in the Fresh Market Plan as previously discussed. The Court finds that despite the fact that the 2004 Plan contains no anti-assignment provision and does in fact clearly permit assignment to health care providers, it is equally clear that no health care provider may be deemed a plan participant or beneficiary under the 2004 Unifi Plan. While the Court has previously assumed, without deciding, that derivative standing for health care providers may exist under ERISA within the Fourth Circuit, derivative standing is based upon the ability of a health care provider to step into the shoes of the plan participant or beneficiary, so as to fall under the actual wording of section 502(a), which provides standing only to plan participants, beneficiaries, fiduciaries, the State, and the Secretary of Labor. See 29 U.S.C. § 1132(a)(2) ("[a] civil action may be brought . . . by the Secretary, or by a participant, beneficiary, or fiduciary"); see also 29 U.S.C. § 1132(a)(7) ("[a] civil action may be brought . . . by the State to enforce compliance with a qualified medical child support order"). The 2004 Plan unambiguously declares that health care providers are not to be considered plan participants or beneficiaries under the Plan. Accordingly, by applying ordinary principles of contract construction, the Court finds that the parties have specifically contracted to prevent any assignee, including health care providers, from obtaining standing as a plan participant or beneficiary. Therefore, Total Renal would not be entitled to additional payment of benefits allegedly due for services rendered

22

to Mr. Wilson in 2004 by arguing that it obtained plan participant or beneficiary status for the purposes of ERISA by virtue of being an assigned health care provider.

Having concluded that the language of the 2004 Unifi Plan prohibits Total Renal from obtaining status as a plan participant or beneficiary, the Court finds that Plaintiff's attempts to raise a genuine issue of material fact by producing extrinsic evidence as to whether the Unifi Defendants understood that the Plan permitted assignment of benefits to health care providers and whether Mr. Wilson intended to assign his rights under the Plan to Total Renal are futile. See Givens v. American Benefit Corp., No. 92-2005, 1993 WL 165002, at *4 (4th Cir. May 17, 1993) ("[a]lleged ambiguities in employee welfare benefit plans should be reconciled by giving language its ordinary meaning; admitting extrinsic evidence is permissible when necessary and relevant.") (citing Glocker v. W.R. Grace & Co., 974 F.2d 540, 544 (4th Cir. 1992)). Thus, there are no genuine issues of material fact as to Total Renal's standing to raise ERISA-based claims against the Unifi Defendants, and the Unifi Defendants are entitled to summary judgment as a matter of law. Accordingly, summary judgment in favor of the Unifi Defendants as to Total Renal's ERISA claim pursuant to section 502(a)(1)(B) for benefits allegedly due for services rendered to Mr. Wilson in 2004 will also be GRANTED.

D.     Plaintiff's Action for Quantum Meruit

Both the Unifi Defendants and the Fresh Market Defendants argue that Plaintiff also lacks standing to pursue a claim for quantum meruit under either federal or state common law, for two primary reasons. First, ERISA broadly preempts state statutory and common law claims:

23

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). A state law "relates to" an employee benefit plan, and is thereby preempted, if, "in the normal sense of the phrase, . . . it has a connection with or reference to such a plan." Clement v. AETNA Life Ins. Co., 355 F. Supp. 2d 813, 816 (M.D.N.C. 2005). More specifically, "when the validity, interpretation or applicability of a plan term governs the participant's entitlement to a benefit or its amount, the claim for such a benefit falls within the scope of § 502(a) . . . and therefore [all related state law claims] are completely preempted." Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 291 (4th Cir. 2003).

In this matter, Plaintiff Total Renal's entire claim for additional monies on the basis of quantum meruit is premised upon the argument that Penn Western – and through Penn Western, the Unifi Defendants and Fresh Market Defendants – has unreasonably reduced Total Renal's billed amounts for dialysis services based upon what Penn Western considers to be "reasonable and customary" as interpreted by the Plan documents. Thus, the "validity, interpretation [and] applicability" of Plan documents are directly at issue in this case. Accordingly, the Court finds that Total Renal's claim for quantum meruit under state law is completely preempted by ERISA.

Second, to the extent that Total Renal argues that its quantum meruit claim is based on federal common law, instead of state common law, the Court notes that the Fourth Circuit

24

Court of Appeals has in one instance expressly allowed an unjust enrichment claim to proceed as a federal question implicating ERISA. <u>See</u> <u>Provident Life & Accident Ins. Co. v. Waller</u>, 906 F.2d 985, 993 (4th Cir. 1990). However, <u>Waller</u> involved a plan administrator suing a beneficiary for monies received as an advance for health care expenses caused by a third-party. After the plaintiff in <u>Waller</u> also received compensation from the third-party, the plaintiff then refused to repay the Plan. <u>Id.</u> at 986-97. As justification for allowing a federal common law claim of unjust enrichment to go forward, the Fourth Circuit noted that the Plan in <u>Waller</u> specifically required beneficiaries to agree to reimburse the Plan where they later received compensation from a third-party. <u>Id.</u> at 993. Therefore, allowing the unjust enrichment claim to go forward would "further the contract between the parties and effectuate the clear intent of [the plan administrator's] 'Acts of Third Parties' clause." <u>Id.</u> Subsequent to <u>Waller</u>, however, the Fourth Circuit reaffirmed the general rule that courts should "proceed cautiously in creating additional rights under the rubric of federal common law . . . ." <u>Elmore v. Cone Mills Corp.</u>, 187 F.3d 442, 449 (4th Cir. 1999). Moreover, in <u>Elmore</u> the Fourth Circuit stated that "[t]here is no express right in ERISA for unjust enrichment" and in that case, the plaintiffs did not establish "'a particularly strong affirmative indication that such a common law right would effectuate a statutory policy' of ERISA on the facts of the case."[12] <u>Id.</u> Likewise, permitting an unjust enrichment claim to go

─────────────────

[12] Additionally, there is some indication that the Fourth Circuit has disaffirmed the holding in <u>Waller</u>, given its opinion in <u>Provident Life & Accident Ins. Co. v. Cohen</u>, 423 F.3d 413, 423-26 (4th Cir. 2005), which recognized that <u>Waller</u> was in "serious doubt" and noted that <u>Waller</u> should be strictly limited to the facts of that case.

25

forward in the instant matter would not effectuate an express term of the Plans or further the

policies of ERISA. Instead, it would go directly against terms of the Plans, which either do not

allow for the assignment of benefits to third-parties and/or specifically prohibit a health care

provider from being able to obtain status as a plan participant or beneficiary. See, Singer v. Black

& Decker Corp., 964 F.2d 1449, 1452 (4th Cir. 1992) ("[r]esort to federal common law generally

is inappropriate when its application would conflict with the statutory provisions of ERISA, .

. . or threaten to override the explicit terms of an established ERISA benefit plan."). Therefore,

the Court finds that the Unifi Defendants' Motion for Summary Judgment and the Fresh Market

Defendants' Motion for Summary Judgment must be GRANTED as to the Plaintiff's quantum

meruit claims, given that a state law quantum meruit claim is preempted by ERISA and a federal

law quantum meruit claim is not available under these facts.

IV.    PENN WESTERN'S MOTION FOR SUMMARY JUDGMENT

Based upon the foregoing determinations, the Court finds that Penn Western's Motion

for Summary Judgment will also be granted. Because Plaintiff Total Renal is precluded from

bringing an ERISA-based claim as an alleged assignee of benefits under either the Unifi or the

Fresh Market Plans, the Court concludes that Total Renal cannot prevail on its ERISA-based

claims against Penn Western, the claims administrator, as a purported assignee of Mr. Wilson,

Mr. Serrano, and Mr. Huntley's benefits.[13]    See, HealthSouth Rehab. Hosp. v. Am. Nat'l Red

_____

[13]    Because the Court has determined that Total Renal lacks standing to pursue a claim
against the claims administrator, Penn Western, for benefits under section 502(a)(1)(B) of ERISA
since the Unifi and Fresh Market Plans expressly prohibit Total Renal from obtaining status as

<u>Cross</u>, 101 F.3d 1005, 1008 (4th Cir. 1996)("[a] person who is neither a participant nor a beneficiary lacks standing to bring an ERISA action against a fiduciary or plan administrator."). Therefore, Penn Western's Motion for Summary Judgment [Document #58] is also GRANTED.

## V. CONCLUSION

The Court has considered the arguments in the Motion for Summary Judgment by the Unifi Defendants [Document #54], and the Supplemental Motion for Summary Judgment by the Fresh Market Defendants [Document #56] which relied on and incorporated arguments previously raised in the Fresh Market Defendants' Motion for Summary Judgment [Document # 28]. The Court finds that the Defendants are not estopped from raising Total Renal's lack of standing as a defense to Plaintiff's claims under section 502(a)(1)(B) of ERISA. The Court further assumes, without deciding, that derivative standing is available under ERISA to a health care provider. However, after a review of the applicable Plan documents from both the Unifi Plans and the Fresh Market Plan, the Court concludes that a clear anti-assignment clause that exists in the 2002 and 2003 Unifi Plans and the Fresh Market Plan would seem to defeat any potential assignment by the beneficiaries of the Plans. Further, the 2004 Unifi Plan, like the previous Unifi Plans and the Fresh Market Plan, specifically prohibits a health care provider from being able to obtain status as a plan participant or beneficiary, thus crippling Total Renal's ability to bring claims under section 502(a)(1)(B) of ERISA as a plan participant or beneficiary. Moreover,

---

a beneficiary or plan participant, Plaintiff's attempt to raise an issue of fact as to whether Penn Western is a "fiduciary" under ERISA is moot.

the Court additionally finds that any state law claim for quantum meruit is preempted by ERISA, and no federal common law claim for quantum meruit is available to Plaintiff under these facts. Accordingly, the Court will GRANT the Unifi Defendants' Motion for Summary Judgment [Document #54] and GRANT the Fresh Market Defendants' Supplemental Motion for Summary Judgment [Document #56]. Additionally, and for the same reasons, the Court will also GRANT Defendant Penn Western's Motion for Summary Judgment [Document #58]. An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 6th day of March, 2008.

United States District Court Judge